OPINION
The present appeal arises from the decision of the Harrison County Court of Common Pleas granting William Sharpe's motion to suppress evidence on the grounds that it was gained through an illegal search. For the reasons set forth below, the decision of the trial court is reversed and this matter is remanded for further proceedings consistent with this court's opinion herein.
 I. FACTS
On September 11, 1998, William A. Sharpe (appellee) was attending the "Hippie Fest" at Hideaway Hills Campground which is located in Harrison County, Ohio. During the course of this festival, undercover Bureau of Criminal Investigation (BCI) agents observed appellee selling LSD and psilocybin from a backpack he was carrying on his shoulder. Eventually appellee approached one of the undercover agents and inquired as to whether he would be interested in purchasing some LSD. The agent accepted appellee's offer and purchased a ten strip of LSD which appellee retrieved from his backpack. A second agent would later purchase psilocybin (mushrooms) from appellee which was again retrieved from the backpack. In addition to the sales made directly to the agents, appellee was observed making sales from the backpack to a number of private individuals who were attending the festival at the campgrounds.
Having witnessed numerous drug transactions, a third agent approached appellee while he was still in the campgrounds and advised him that he was under arrest. At this time, appellee still possessed the backpack from which the drugs had been obtained. Appellee was escorted to the parking area adjacent to the campgrounds where deputies from the Harrison County Sheriff's Department were waiting. Upon arriving in the parking area, appellee's backpack was removed from his person and placed on the hood of a police cruiser. The arresting officers then patted down appellee and handcuffed him. Appellee's backpack was then emptied onto the hood of the police cruiser. Drugs and money were found in the backpack.
Appellee was subsequently indicted by the Harrison County Grand Jury on September 22, 1998 on three counts of selling a controlled substance and two counts of possessing a controlled substance, particularly LSD and psilocybin. Appellee filed a motion to suppress the LSD and psilocybin which was obtained from his backpack as it related to the two counts of possession of a controlled substance. The basis for appellee's motion was the belief that the drugs were the fruit of an unconstitutional search and seizure in violation of both the U.S. and Ohio Constitutions. In appellee's opinion, the search could not be classified as a valid search incident to arrest as he had already been restrained and handcuffed at the time the backpack was searched. Therefore, there was no possibility that he would retrieve a weapon from the backpack or destroy any drugs contained therein.
A hearing was held in regards to appellee's motion on November 20, 1998. At that time, the state presented testimony from the BCI agents who participated in the drug purchases and subsequent arrest of appellee. Appellee testified in support of his motion and called an additional witness who viewed the arrest and accompanying search. Following the hearing, both sides submitted written closing arguments and memoranda of law pursuant to the trial court's request. The state argued in its memorandum that the search was a valid search incident to arrest as appellee had the backpack on his person at the time the arrest was made. Alternatively, appellant argued that the drugs from the backpack should not be suppressed as they would have inevitably been discovered when an inventory was taken at the police station.
Despite these arguments, on January 8, 1999, the trial court granted appellee's motion to suppress based upon the reasoning set forth in State v. Myers (1997), 119 Ohio App.3d 376. It is from this decision that the state filed a timely notice of appeal and certification pursuant to Crim.R. 12 (J).
 II. ASSIGNMENT OF ERROR
While the state raises two assignments of error on appeal, our decision as related to the first assignment of error renders the second assignment of error moot. Therefore, we will limit our discussion to the first assignment of error which reads as follows:
 "WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION BY SUPPRESSING VALIDLY COLLECTED EVIDENCE PURSUANT TO AN INVENTORY SEARCH FROM A DEFENDANT WHO WAS ARRESTED AT THE TIME OF THE SEARCH."
The state argues that the arresting officers were permitted to search appellee's backpack as the search took place incident to a valid arrest for selling a controlled substance. Since appellee had immediate control over the backpack at the time he was arrested, it is asserted that the arresting officers were permitted to search it in conjunction with a search of appellee's person. The state contends that the trial court erred in applyingMyers as in that case the defendant did not have possession of her purse at the time the arrest was made. On the contrary, at the time the defendant was arrested for disorderly conduct, her purse was on a table rather than in her physical possession. Id. at 381. Hence, the arresting officers possessed no valid reason to search the container. Id. The state argues that the present case is distinguishable as appellee had physical control of the backpack at all relevant times herein.
Appellee responds by arguing that the search was not valid incident to a lawful arrest as he had already been neutralized when the backpack was searched. Once the arresting officers handcuffed him, there was no longer any danger that a weapon would be obtained or evidence within the backpack would be destroyed. Therefore, the arresting officers were no longer permitted to search the backpack absent the issuance of a search warrant.
 A. STANDARD OF REVIEW
This court has previously concluded on numerous occasions that our standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Lloyd (1998),126 Ohio App.3d 95, 100; State v. Winand (1996), 116 Ohio App.3d 286,288, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604,608. Such a standard of review is appropriate as "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v.Hopfer (1996), 112 Ohio App.3d 521, 548, quoting State v. Venham
(1994), 96 Ohio App.3d 649, 653. As a reviewing court, we must accept the trial court's factual findings and the trial court's assessment of witness credibility. State v. Brown (Sept. 7, 1999), Belmont App. No. 96-BA-22, unreported, 2, citing State v. Anderson
(1995), 100 Ohio App.3d 688, 691. However, once we have accepted those facts as true, we must independently determine as a matter of law whether the trial court met the applicable legal standard.State v. Williams (1993), 86 Ohio App.3d 37, 41.
 B. APPLICABLE LAW
Both the Fourth Amendment to the U.S. Constitution and Section 14, Article I of the Ohio Constitution require government officials to procure a warrant based on probable cause prior to conducting searches and seizures. In light of this constitutional authority, warrantless searches have been held to be per se
unreasonable, subject to a number of well-recognized exceptions.Katz v. United States (1967), 389 U.S. 347, 357. One such exception to the warrant requirement which has been recognized by the U.S. Supreme Court is a search incident to a lawful custodial arrest. Chimel v. California (1969), 395 U.S. 752.
Pursuant to Chimel, a law enforcement officer may conduct a warrantless search of both the arrestee and the area within the individual's immediate control whenever said search is incident to a lawful arrest. Id. at 763. The basis for this exception is to allow law enforcement officers to discover and remove weapons as well as seize evidence to prevent its destruction or concealment.Id. The U.S. Supreme Court would later hold that a search incident to arrest not only is an exception to the warrant requirement but also is to be considered a "reasonable" search pursuant to theFourth Amendment of the U.S. Constitution. U.S. v. Robinson
(1973), 414 U.S. 218. The Ohio Supreme Court adopted the reasoning set forth in both Chimel and Robinson when it decidedState v. Mathews (1976), 46 Ohio St.2d 72.
Various federal appellate courts have analyzed the principle of a search incident to a valid arrest and have provided guidance as to when in fact the search will be deemed to be proper. For instance, in U.S. v. Nelson (C.A. 4, 1996), 102 F.3d 1344, the Fourth Circuit analyzed a case which is analogous to the one presently before this court. In Nelson, the defendant went to an apartment owned by Omar Grajales in order to pick up two kilograms of cocaine. Unbeknownst to the defendant, Drug Enforcement Agency (DEA) officers were waiting at the apartment as they had received a tip regarding the impending drug transaction. Immediately upon entering the apartment, defendant was placed under arrest. At the time of arrest, defendant was carrying a black shoulder bag which the arresting agents attempted to check while appellant still possessed the bag. However, these attempts were unsuccessful because they could not completely view the contents since defendant had his hands on his head. Therefore, the bag was removed from defendant's person and he was taken to the upstairs area of the apartment so he could be questioned. Within minutes of the arrest, one of the arresting agents searched the bag and discovered $43,000.
At the trial court level, the defendant filed a motion to suppress arguing that the search of the bag was improper as it was not incident to arrest. Since he had been separated from the shoulder bag and the search was not made immediately upon arrest, it was asserted that the bag could only be searched after a warrant had been obtained. Defendant's motion was overruled by the trial court and the court of appeals affirmed this decision on appeal. The Fourth Circuit Court of Appeals reasoned that although you cannot have an indefinite delay in the search, the "justification [for the search] does last for a reasonable time after the officers obtain exclusive control of the container that is to be searched." Id. at 1346. The court further reasoned that the focus of a court's inquiry should be whether the container was within the immediate control of the suspect at the beginning of the encounter with law enforcement officials and whether any delay in searching the container can be viewed as reasonable in nature.Id. at 1347, citing U.S. v. Han (C.A. 4, 1996), 74 F.3d 537, 543;U.S. v. Litman (C.A. 4, 1984), 739 F.2d 137, 139.
The Fifth Circuit Court of Appeals made a similar determination in deciding U.S. v. Johnson (C.A. 5, 1988),846 F.2d 279. In that case, defendant was a mail carrier who was being investigated by the postal service for embezzlement of mail. After a decoy letter failed to show up, defendant was called into the post office by postal inspectors for questioning. At the time defendant was questioned, he had on his person a small zipper-like briefcase. The postal inspectors first patted down defendant then inquired as to whether he had any mail on his person. Upon answering with a negative response, defendant was ordered to empty his pockets. Defendant then pulled the decoy letter from his back pocket. Having obtained sufficient evidence for an arrest, one of the postal inspectors confiscated defendant's briefcase which had been sitting on the floor next to him. The briefcase was searched and a second letter was found amongst the contents. Hence, a two count indictment for embezzlement of mail was handed down against defendant.
Defendant's motion to suppress the letter which was found in the briefcase was denied. On appeal, the Fifth Circuit held that the search of defendant's briefcase was permitted pursuant to a valid arrest despite the fact that the postal inspector had obtained control over the container. Id. at 283. The court reasoned that the briefcase was under defendant's exclusive control at the time of the arrest and was thus susceptible to a warrantless search. Id.
In U.S. v. Morales (C.A. 8, 1991), 923 F.2d 621, law enforcement officers stopped and arrested Julian Jorge Morales based upon a confidential informant's tip that Morales was in possession of narcotics. At the time of the arrest, Morales was carrying a number of bags which the arresting officer's removed from his possession. As Morales stood three feet away spread-eagle against the wall, law enforcement officers searched the bags and found a kilogram of cocaine. Following a denial of a motion to suppress, the Eighth Circuit concluded that the search was valid incident to Morales' arrest. Id. at 626. In the court's opinion, the term "immediate control" extends beyond the area which is conveniently or easily accessible to the arrestee. Id.
Finally, the Tenth Circuit analyzed the validity of a search incident to arrest when it decided U.S. v. Herrera (C.A. 10, 1987), 810 F.2d 989. In Herrera, postal inspectors were investigating the loss of a large number of letters that contained food stamps. In an attempt to uncover the culprit of these thefts, the inspectors placed a letter into the mail which contained food stamps as well as a tracer. The letter was ultimately traced to the possession of a postal service employee. As the defendant left the post office, two postal inspectors intercepted him in the parking lot. At that time, defendant was carrying a briefcase. The postal inspectors immediately seized the briefcase and escorted defendant back into the building. Upon entering the building, the contents of the briefcase were dumped onto a table and the "test" letter was recovered. As a result, defendant was charged with theft of mail and receipt of stolen mail. After having his motion to suppress the letter denied, the defendant sought review by the Tenth Circuit Court of Appeals. The court concluded that the search was valid as a search incident to arrest as the postal inspectors could have opened the briefcase when it was first retrieved in the parking lot. Id. at 990. The mere fact that the inspectors waited a few moments in order to open the briefcase inside the building was of no consequence. Id. The briefcase had been under defendant's control at the time of the arrest and the search itself was not too remote in time as related to the arrest. In citing to New York v. Belton (1981),453 U.S. 454, fn. 5, the court concluded that "[i]t is difficult to see how there could be a search and seizure during the course of a lawful arrest if a scenario such as this is not upheld." Id.
 C. ANALYSIS
Despite appellee's argument to the contrary, the search of the backpack was a proper search incident to a valid arrest. At the time appellee was approached by BCI agents within the confines of the campgrounds, he clearly had physical control over the backpack as it was over his shoulder. Appellee was immediately advised that he was under arrest for the sale of a controlled substance and was subsequently escorted to the adjacent parking area. While in the parking area, appellee was frisked, the backpack was removed and he was handcuffed. Appellee admitted in his testimony during the hearing on the motion to suppress that until he was patted down and handcuffed in the parking lot, the backpack remained under his physical control. Therefore, it cannot be refuted that at the time the actual arrest was made, appellee did have control over the backpack. The mere fact that the backpack was momentarily placed on the hood of the police cruiser prior to the actual search is inconsequential. The backpack was only placed a few feet away from appellee and the search occurred within moments of the point in time it was removed from appellee's shoulder. This series of events is comparable to the circumstances present in Nelson, Johnson, Morales and Herrera.
As in Nelson, the container which was ultimately searched was within the immediate control of the arrestee at the beginning of the encounter with the law enforcement officers. Moreover, any delay in the search was justifiable and reasonable. The search cannot be viewed as being too remote in either time or space as related to the arrest and confiscation of the backpack due to the fact that it occurred almost immediately after the removal from appellee's person. While appellee may have been "neutralized" as he alleges in his brief, the fact remains that at the time of the arrest itself the backpack was under appellee's immediate control. A proper search incident to arrest does not dissipate merely because the container is removed from the arrestee before the search is conducted. Nelson, Johnson, Morales and Herrera. To hold otherwise would essentially eliminate the search incident to arrest exception to the warrant requirement in cases like this as a law enforcement officer would only be entitled to conduct a search while the arrestee maintained control of the container.
For instance, in the present case the arresting officer would have to open the backpack while it still remained on appellee's shoulder. In the event the BCI agent undertook such a task, he would certainly be exposing himself and the other officers to potential harm as the bag could contain a weapon. Opening the backpack within appellee's reach thereby exposing a weapon is contrary to the reasoning behind the creation of this exception. Furthermore, having opened the backpack while it was still on appellee's person would provide appellee the opportunity to reach in and destroy evidence. These situations are of the very type which are to be avoided. Chimel.
While the trial court and appellee rely upon Myers, the reliance is misplaced as the facts in the case at bar are distinguishable. In Myers, law enforcement officers responded to a house in regards to a potential burglary. Upon arriving at the house, it was discovered that defendant had broken the glass out of the front door in order to gain access to the home as the occupants would not facilitate her entry. Apparently, defendant rented a room in the house. Seeing the damage to the door, the owner of the home requested that defendant be arrested. Defendant became infuriated and attempted to strike one of the officers. Based upon this conduct, defendant was arrested for disorderly conduct and handcuffed. Subsequent to the arrest, one of the officers located defendant's purse on a table and searched it for verification of defendant's identification. During the course of this search, a small straw was found which alerted the arresting officers to the fact that drugs may be located in appellant's rented room. A search of appellant's room did confirm the presence of additional drug paraphernalia as well as cocaine. The evidence seized from the purse was properly suppressed in that case as it was never shown that defendant ever had physical control over her purse at the time of arrest. Absent a showing that defendant ever had physical control of the purse, the arresting officers were unable to utilize the search incident to arrest exception to the warrant requirement. Cf. Nelson and Johnson.
Appellee's reliance on City of Centerville v. Smith (1973),43 Ohio App.2d 3 is similarly misplaced. In Smith, law enforcement officers located defendant in the bathroom of the house and took him to the living room where he was placed under arrest. Thereafter, a search of the bedroom adjacent to the bathroom was conducted. This search yielded a bag of amphetamines which resulted in a criminal charge of possession of amphetamines. Under circumstances such as these, the appellate court properly determined that the motion to suppress the amphetamines should have been granted by the trial court since the search did not constitute a valid search incident to an arrest. The law enforcement officers located the drugs in a room other than that in which defendant was arrested. Moreover, there was never a showing that defendant ever had the bag under his control when he was arrested. As aforementioned, appellee in the case at bar, clearly had control of the backpack at the beginning of the encounter thereby justifying a search incident to arrest.
The case at bar is more analogous to the facts present inMathews, where the Ohio Supreme Court upheld the search of defendant's purse which she was clutching at the time the arrest was made. Even though the arresting officer conducted the search of the purse after it had been removed from defendant's possession, the court held the warrantless search was permitted as defendant was in control of the purse at the time the arrest was made and the search was conducted contemporaneously with the arrest. Id. at 76.
For the foregoing reasons, the decision of the trial court suppressing the evidence obtained from appellee's backpack is reversed and this cause is remanded to the trial court for further proceedings according to law and consistent with this court's opinion.
Cox, P.J., dissents; see dissenting opinion, Donofrio, J., concurs.
 _________________________ JOSEPH J. VUKOVICH, JUDGE